We will hear argument next in No. 251094, Natalie Thomas v. EOTech, and Mr. Santo, whenever you're ready. Thank you. Good morning, Your Honor. May it please the Court, my name is Jordan Santo. I represent the appellant, Natalie Thomas, in this matter. Today we're dealing with a case that turns on one of two questions. One, whether or not the timeline provisions and the timeline requirements, the timeliness requirements of Title VII, the ADEA, and the Maryland State Analogous Statute are substantive rights under the law or are waivable pursuant to contract with regards to limitations. And two, if they are waivable, whether or not the waiver or the limitation in this case was a reasonable limitation. Mr. Santo, I think you just answered a clarification question I just wanted to make. You're not appealing the dismissal of the Section 1981 claim, right? That's correct, Your Honor. And I double-checked the notice of appeal. And the notice of appeal does specifically state the Title VII, the ADEA, and the MMDA. I just want to confirm. But I would agree, Your Honor, and that was discussed extensively. I believe you even admitted during argument at the district court that there is precedent in case law that establishes that limitations provisions for Section 1981 claims are permissible. Sure. And the difference that we have here is that this is not a 1981 claim that we're dealing with. It's Title VII, ADEA, which do have the requirements with regards to exhaustion of administrative remedies that don't exist with Section 1981. And that issue here is a tension between precedent or case law in the Sixth Circuit, specifically Logan v. MGM, which was briefed in our briefs and at the lower court, and then case law from this Court, In re Cotton Yarn. In re Cotton Yarn deals with allowance for permits. Well, let's start with Cotton Yarn since one of those cases is binding on us and the other one is not. What is your bet? How would you have us distinguish Cotton? Presumably you would have us distinguish Cotton Yarn. What are the two or three bases on which you would have us distinguish Cotton Yarn from this case? Because we can't write an opinion ruling for you without saying Cotton Yarn doesn't control here because. Understood, Your Honor. And not only with Cotton Yarn but with the other cases from the Fourth Circuit and even the Second Circuit and in some cases the Supreme Court that we deal with the timeliness issue, all of those cases deal with arbitration agreements. And whether or not an EEOC charge has to be filed before the case is taken to arbitration. In re Cotton Yarn specifically deals with arbitration and a different aspect of it, the Sherman Act doesn't deal with the EEOC, so it's not directly applicable to Title VII. But if you look to Bracey, and I apologize I don't have the, I have it here in my outline, Bracey v. Lancaster, Lancaster Foods LLC, which is a Fourth Circuit case from 2020, that's an ADA claim in which there was a limitations provision in contract in the employment agreement. But again, the arbitration agreement was what was at issue there, and that arbitration agreement did not require an employee to file first with the administrative agency. Also, doesn't Cotton Yarn make a fair bit of a point of the like, unlike some situations where a Congress creates the substantive liability and the limitations period in the same statute, which this old Justice Holmes opinion says might be important for some reason. Cotton Yarn makes a point of saying that's not the case in Cotton Yarn. In Cotton Yarn, there's the liability provision and then the limitations period is in a statute that's passed later as part of some other bill. Like, whether that's a persuasive distinction or not, it feels like Cotton Yarn says that's an important distinction. That was a friendly question. I agree. I do think that there is some distinction, and it all still comes down to whether or not that subsequent statute, I think, directly points to the cause of action at issue. And so even if it's a separate statute that's either amending a right or clarifying a right, that's still a subsequent statute as opposed to a general catch-all, all contract claims, all tort claims have a certain amount of time in which they could be filed. I would also point specifically to the dissent in In Re Cotton Yarn, which, again, in part was unanimous to some parts, but Judge Johnston in his dissent, dissented specifically to Part 2B, addresses that he disagreed with the majority and believed that the statute of limitations is actually a substantive right. Why does it matter what a dissenting judge thought? It mattered, one, because it shows that it's not a unanimous decision with regards to the specific provision. It turns out that 2-1 decisions are just as binding on us as 3-0s. I agree, Your Honor, but it also, in addition, that plus the aspect that that dealt with arbitration agreements gives room for this Court to distinguish Cotton Yarn from this matter, because this is not an issue with an arbitration agreement. It's solely a limitations issue. And because this is not we're now back into the realm of we're no longer dealing with a contract for arbitration and a separate forum in which rights can be pursued. But the emphasis, it's the definition of substance and the substantive right that's addressed in the dissent that discusses that the substantive right at issue is the limitation on the recovery, not when and where the cause of action could be obtained, but it's the recovery, the amount of damages that could be obtained, and that's an issue that's not waivable. So here in Ray Cotton Yarn, it's an issue of when to bring the claims in arbitration. You don't have to exhaust administrative remedies. Here, the agreement did require, the employment agreement requires exhaustion of administrative remedies before filing in court. Can I ask you a question about the substantive right concept here? Yes, Your Honor. I mean, as I read the case law, assuming the statute or the limitations period is a substantive right, that means it can't be waived if waiver would be contrary to the legislative policy behind the limitations period. Okay. But limitations periods are not there to benefit plaintiffs and make sure they have enough time to file claims. They're there to benefit defendants and make the plaintiffs hurry up and file their claims. So I am trying to figure out how a shorter limitations period is contrary to the policy behind the limitations period, which is a pro-defendant policy that puts a temporal limit on liability. Do you see what I'm saying? I do, Your Honor. And I think that I would point to a case that was cited by my colleague across the aisle, Zipes v. TWA, which is a Supreme Court case, which addresses specifically the jurisdictional aspect of the filing of an EEOC charge, but also discusses the congressional intent behind Title VII and statutes of it, which is the remedial intent to extinguish discrimination in employment. And so the policy issue here is to give maximum impact and maximum effect to the remedial impact of Title VII in the ADA. So while a limitations period exists within the statute, as Zipes discussed, the purpose of the filing within a limitations period is to provide prompt notice to the employer. So it doesn't But now the notice will be even prompter. Like why isn't it better that it's shorter? Well, and the reason why that's Again, I'm not seeing the conflict with the policy. It's because this agreement itself, the way that the agreement exists, does not create a separate time limit between pre-filing with the administrative agency and post-filing. It creates a world in which an employee could file on day 180 with the administrative agency, have the case dismissed, and then have no remedial effect in court. The other cases that address the limitations provisions all do so in connection with an arbitration agreement and ostensibly all argue and discuss that in those circumstances, filing with the administrative agency is not necessary before bringing the claim. And so in that circumstance, in exchange for the shortening of the limitations periods in those arbitration agreements, it essentially discusses a waiver of the requirement that the employee then proceed first with the administrative agency. So the purpose, the remedial purpose of the statute still remains firm. What do you mean by remedial purpose? Like people should win if they've been discriminated against? Is that what you mean? The remedial purpose is to extinguish and eliminate discrimination in employment. Okay. So the way, I mean, it seems like if, just to paraphrase, I think this is Judge Easterbrook who originally said this, no statute that's ever been enacted pursues its goals to the absolute maximum because if that was the maximizing goal of Title VII, there would be no limitations period whatsoever. Right. Because it would be, we would eliminate even more discrimination if we had no limitations periods whatsoever. So it can't be that that is the overriding uber alis purpose of the statute because the one thing I know about this statute is it has a limitations period. It does have a limitations period, Your Honor. I would agree with that and I do believe that there does need to be some limit, but I would argue that the way that Congress enacted Title VII in the ADA was not to limit access and availability beyond that time frame that they placed in the statute to seek that remedial end. So this is like the sort of carefully reticulated remedial scheme and Congress made judgments that you should get this much time but no longer and saying that you could contract around that would upset the integrated remedial scheme of the statute. And it's not just, I would agree with that, Your Honor, but it's not just an A to B to C process. The purpose of the EEOC was to attempt to resolve discrimination at a lower level. Unlike other administrative agencies such as the Merit Service Protection Board, the National Labor Relations Board, the EEOC itself doesn't have enforcement power. It would have to then bring a cause of action. I'm sorry, so it seems like your answer to me might be this is not just any old statute of limitations. Most statutes of limitations, if you shorten them, that's not going to be contrary to the policy, which was to protect the defendant from unending liability. That's entirely consistent. But this one's different because it's part of this highly refined, carefully reticulated, larger conciliation process. And so if you start, it does things other than protect a defendant from temporarily unlimited liability. That's correct, Your Honor. And moving on, again, I think the largest part here is dealing with the specificity with the timing and the conciliation aspect of the EEOC charge. But then moving to the reasonableness with regards to the shortening of the period. Yeah. Specifically, let me ask on that. I'm glad you went there. What is your best authority for the proposition that 180 days is unreasonably short? I do not have an authority to say that 180 days itself is unreasonably short. I think the issue here is that this timeline does not split itself between pre-filing and post-filing, and then there's, it robs, or the 180 days can rob the employee of the opportunity to file the cause of action. Because why? Just walk me through this, and I'm sure it's in the briefs, and I apologize. I'm just not remembering here. How long does a person have to go to the EEOC? They have 180 days under the agreement. So if they, the hypothesis, no, I'm sorry. Absent the agreement, as a matter of, like, substantive law in the world, how much time would an employee have to go to the EEOC? To go to the EEOC. Yes. So absent the agreement, it would be 180 days unless it's a deferral state, and the state has an agency, then it would be 300 days for the Federal claims to go to the EEOC. So, okay. So in other words, they're saying 180 days could, if it was a deferral state, actually limit the amount of time you have to go to the EEOC. Literally, like, literally, you could get timed out during the time that absent the agreement, you could still go to the EEOC in the first instance. Yes, Your Honor. And, again, utilizing that hypothetical, if that employee under this agreement filed on day 180, which is permissible whether it's a deferral state or not with the EEOC, the moment that they're Or day 250 if it's a deferral state, right? Right. So if they filed on day 181 or after, as soon as the EEOC dismisses that claim and issues the dismissal notice of rights, the employee would no longer have any avenue to recover in a private cause of action, and arguably it would completely rob and defeat the purpose of the administrative agency process and then also the claims. So I think the issue here with reasonableness really addresses not only filing with the agency but then filing with the court. Under this language, although the 180-day period is told during the process, as Your Honor stated, if they filed on day 200 while the federal claims could have, without this agreement, proceeded then within 90 days of dismissal to court, under this agreement they would not be able to do so. Can I move to the state law claims? Yes, Your Honor. I'll just state up front what the dilemma for me here is. I think you have actually a quite plausible argument under Ciccone, if I'm pronouncing that name correctly, that there should have been tolling under the state law claims, but I'm not sure in any way you've preserved the argument. So in your brief you basically treat the state law claims as if they're governed by the same principles as the federal law claims. Why is that? I mean, don't we all agree that whether or not you can shorten a limitations period under a Maryland statute is obviously a question of Maryland law? I don't know why federal law would possibly care if you can shorten a limitations period on a Maryland cause of action. I think the briefing really addressed whether or not the timeline and the timing in the Maryland statute, the analogous Maryland statute, also constituted a substantive right as opposed to a waivable or shortening right. But in principle, the Federal courts and the State courts could give completely different answers to that question, right? Because the State courts could say, barring some Federal constitutional issue, none of which is immediately springing to mind, Maryland courts can say the rules are whatever the Maryland courts say they are, right? And there's no reason they have to. So, like, I don't see any argument in your brief that engages the framework that the Supreme Court of Maryland has said we're supposed to use for deciding whether you control a Maryland limitations period. Fair enough, Your Honor. And I think the argument there is really with regards to the reasonableness aspect, because Saccone does speak to reasonableness, and it lays out different factors in which the courts are considering. Right. And which factors do you think cut in your favor here? I think the biggest one is whether or not the limitation applies to both sides or one way. And where is that in your brief or in your briefs before the district court? It is not. That specific aspect of it is not, but the issue of whether or not the limitations period is reasonableness. But I would agree that that specific language is not in the briefing here, nor was it argued specifically at the district court. So, again, Your Honors, I would ask that, primarily speaking, that this court find that the limitations period contained within Title VII, and in this case also the Maryland statute, is a substantive right, or alternatively that even if it is waivable under NRA Cotton Yarn, if that were to apply, which we argue that it doesn't and is distinguishable, that the shortening of the limitations period, particularly in the fact that it doesn't distinguish between pre-filing with the agency and post-filing, is unreasonable, and that this court reverse and remand for additional proceedings. Thank you. Thank you. Thank you. Your Honors, good morning. I think it's still morning, and may it please the court. My name is Donovan Asmar. I am the attorney for EOTech LLC. It is an honor and privilege to be before you today. I'd like to focus, if I may, and please ask whatever questions you'd like, but the district court in this action took great pains to analyze binding and held that under that precedent, the limitations agreement in this action that was signed by plaintiffs separately is not in conflict with the Fourth Circuit precedent. Let's start off by having a conversation regarding, because NRA Cotton is arbitration, the arbitration agreement, which in that case, it seems to me to be a little, it seems to be more procedural than a substantive right, because clearly once you go into arbitration, the parties there still have an opportunity to get relief under. Here, if you're talking about exhaustion of remedies, it seems as if you're cutting the right, the substantive right, if you accept what counsel says is a substantive right, you're cutting off the amount of time through exhaustion of remedies where they have no recourse here, whereas in an arbitration agreement, it's basically determining the form. I have two responses to that, if I may. The first is, it is not settled that enacting a limitations period or enacting a shortened limitations period deprives a plaintiff in a Title VII or in an ADA case of the jurisdiction of the courts. That's number one. Number two, with respect to the limitations agreement, the important feature here, unlike Logan in the Sixth Circuit and unlike a lot of these cases that have appeared in the arbitration context, is this limitations agreement has a tolling provision. That provision was not in front of the Sixth Circuit in Logan and to my knowledge has not been in front of any other circuit in this country. That tolling, I'm sorry, Your Honor. Please finish your answer. Your Honor, Judge Benjamin, that tolling provision is consistent with the purposes of Title VII. It preserves the plaintiff's ability to seek and access the EEOC's procedures. Even if it's one day. I was just going to get there. Does it shorten the time period? Of course it does. Of course it does. But it doesn't just shorten the time period to go to EEOC, sorry, to file suit. So the hypo that your friend on the other side did. So let's say we're in a tolling state. So under Federal law, I have 300 days to file a charge with EEOC. I file a charge with EEOC on day 250. From EEOC's perspective, it's 50 days before I had to file this. EEOC investigates and they think pretty seriously about bringing a government action, but they don't because of budgetary restrictions or whatnot. So they issue me a right to sue letter. I get a right to sue letter that says it's from EEOC that says you have 90 days to file a lawsuit. But I don't sleep on my rights. I'm like, no, no, I'm going to. So I literally, the day I get that letter, I file my complaint in court. And under your view, my sue is untimely, right? If it's a 180-day toll, 180-day provision like we have in this case, Your Honor?  Yes. So even though the statute says I have to go to EEOC, the statute says I have 300 days to go to EEOC, I did that. And I'm time-bound. Yes. Oh, and sorry. Under the statute, I have to go to the EEOC. I'm forbidden from going straight to court, right? Like I have to go to the EEOC first. Yes, but. Okay. Yes, you have to go to the EEOC. But nothing also prevents you from filing suit and seeking a stay of that action pending the EEOC's administration process.  Can I just say, I feel like we're maybe over on the reasonableness side of things. And I do understand, I think, your argument for that 180 degrees, 180 days is maybe not unreasonably short exactly. But what you are describing is extremely complex and cumbersome. And it also, there's this real potential for misleading when a plaintiff, potential plaintiff, gets a letter from the EEOC saying you have 90 days. Oh, my gosh. I don't know what's going on. 90 days to sue. And that turns out to be wrong. I mean, this just seems, the scheme you are setting out where people are going to file for stays in district courts, that is not what Congress intended when it set out this relief, complicated, integrated scheme of relief. It clearly isn't what was intended. And it's going to mislead a lot of would-be plaintiffs. Let me respond in this way, if I may, Your Honor. Any shortening of a limitations period would have that effect, right? That means maybe you can't do it under Title VII, which has this very integrated, carefully articulated remedial scheme. Congress could have said in Title VII or any other discrimination statute that you may not shorten this limitations period. You mean kind of like they sort of said in the ADEA? That's fair, Your Honor. Which is one of the claims at issue in this case, that you purported to shorten the amount of time people have to sue? But that also has to, we have to consider that, number one, in this circuit, the law has been for over 80 years that parties are free to contract to shorten a limitations period. So long as... That's the one sentence of dicta in Cotton Yard that you're relying on? Well, it also comes from Atlantic Coastline, Your Honor. That's a 1941 case. So it's not just Cotton Yard. It comes from Atlantic Coastline. Can I take a step back? Please. So we've been talking about the specifics, and Judge Harris is right. I think there's some of these specifics. But I want to take a step back. So the motion you filed in this case was a 12B6, right? Yes, Your Honor. So that's a motion to dismiss for failure to state a claim on which relief can be granted, right? That's correct, Your Honor. Okay. And because it was untimely, right? That's the theory. And we've said before that statutes of limitations are an affirmative defense, right? That there are cases that it's an affirmative defense that has to be planned, right? So what you're essentially saying is that the parties by contract can create an affirmative defense to a federal question lawsuit? That seems really strange. I don't understand how you can, by contract, create an affirmative defense to a federal question lawsuit in the first place. I'll put it to you this way. I think the district court recognized that. And I think that's why the district court converted the motion by stipulation of the parties to a rule- But that doesn't really – yeah, I get that. But still, the district court then granted summary judgment for you on the grounds that the suit was too late. In other words, the district court found that you had by – and I don't blame the district court in any way. We have Cotton Yarn. We have the unpublished opinion. It's not – nothing on the district court. But the district court essentially ruled that you have a substantive defense to a federal question lawsuit that the parties created via contract. And that just seems weird that you can even do that. Help me with the weirdness, and I'm sorry to put it back to you because- Okay, so let me give you the analogy that really struck this with me. So the Supreme Court a number of years ago had a case about how you enforce forum selection clauses. And some parties in courts had argued that if you sue in a court that's other than the place that is labeled in the forum selection clause, the proper way to vindicate that is a motion to dismiss under 12b-3, improper venue. And the Supreme Court, in opinion, says 9-0, I believe. That's crazy. Private parties – the venue of federal courts is determined by federal statutes. Parties can't create venue. Parties can't destroy venue. And I would sort of think that the defenses available in a Title VII action are the defenses that Congress creates for a Title VII action. And they did. The defense in a Title VII action is you have to go to the EOC within 180 or 300 days, and then you have to sue within 90 days. And if you don't do that, then you have a defense. But we all agree that defense is not available to you here because they didn't violate that. So it's as if the parties by contract created a new defense to a Title VII action. And I just think that in almost no area of law would we let someone do that. I understand that concern. I do. But there's also this other concern. And I'll tie it back to the arbitration discussion if we can. Why is it that a party, if arbitration is the distinction, if you say you can limit the statute of limitations, so long as you say you're going to forego the EOC process and submit these cases to arbitration? Because the Federal Arbitration Act says you can agree to arbitrate claims. Sure. And Congress encourages it. Agreed, right? Why shouldn't it be any different here? And I guess my point is just because there is a short end of the limitations period, I can understand how if Logan was in front of you today and not this limitations period in front of you, I can understand how it would seem unreasonable to prevent a party from seeking an EEOC investigation through that agreement. But here, all this limitations period is intending on doing is, yes, shortening the limitations period, but also telling the plaintiff that if it acts and does so quickly, that claim will be preserved from the moment it is filed. But it still messes with, I mean, I take your point about the tolling provision.  It's hard for me to imagine how Logan could have come out differently given the lack of a tolling provision. But even if you have a tolling provision, it does mess up what Congress put in place. And I was trying, really my law clerk was trying to help me think this through. You know, you're supposed to have at least 90 days before you have to go to the EEOC. And if you shorten that, say this plaintiff decides to split the difference, so now it's only 45 days, like the EEOC isn't getting the benefit of the same amount of kind of speed work that the plaintiff is supposed to do before they go to the EEOC. And then at the back end, the plaintiff has less time to kind of metabolize what the EEOC investigation has turned up and get that into a decent complaint. Like Congress picked these time limits presumably with some care, because they thought those were the time limits that would give the fullest effect to the EEOC process. At the front end, the plaintiff has at least 90 days to do the work. And at the back end, at least 180 days. And at the back end, at least 90 days to take the results of that investigation and turn it into a complaint. And now you're just making everyone do less good work because they have to rush it through. The rushing part at the EEOC, and I know that's not the most articulate way to say that, but the rushing part at the EEOC, the idea, the intention of this agreement was to allow that process to unfold so long as the plaintiff seeks the EEOC's assistance in a specific time frame. Earlier than it would otherwise be required to.  Right. In this deferral state, Your Honor. Well, even in a non-referral state, right, because don't you normally have 180 days to go to the EEOC? Yes. Right, and so obviously the plaintiff can't do that. Of course. In theory, you could wait the 180 days, and under our agreement, if it's 180 days limitations period, you would have exhausted all those 180 days. I understand that. All right, so that would not work. I understand that. Okay. Of course. The problem, too, here is. Can I just ask you this? Please. I really am trying to figure out how this would work. If you were advising a potential plaintiff, how would you tell them to kind of split the time, the 180 days they've been given? Would you say, like, what do you think would be the most effective way for a plaintiff to use those 180 days? Where should they take it from, the front end or the back end? If I were a plaintiff, I would take it from, I almost said front, and now I'm wavering to back, and now I'm wavering to front. It is difficult. It is a difficult thing to conceptualize and think about.  But I would do this. I would file as soon as I could with the EEOC and allow that process to unfold. While that EEOC process is unfolding, I would engage my attorney to prepare a complaint, a civil complaint. But what if the EEOC is going to sue for you? That's a lot of money. I mean, why should you have to hire a lawyer when the EEOC hasn't decided whether it's going to sue? Fair, which is why I would do it as soon as possible. I would file my action with the EEOC, the charge of discrimination, as soon as possible. Do you have any idea what percentage of people who file charges with the EEOC have lawyers when they file those charges? I do not, Your Honor, but I'm sure it's a very low, low percentage. A very small number of them? Of course. And that's also the purpose of Title VII, right? We're trying to ensure that if a discrimination case arises, those with the least means or those with unavailable means are able to access the EEOC's system. So can I go back to that 250-day hypo? Yeah. So we all agree that assuming for the sake of argument that this provision is binding on the individual, it is in no way binding on EEOC, right? The limitations agreement? Yeah. No, it is not binding on EEOC. So in other words, if a person who signed this agreement filed with EEOC on day 250 and EEOC sues you, you have no argument whatsoever. Agreed. So that then means that for that category of plaintiffs, whether EEOC chooses to bring its own action actually dictates not just whether it's EEOC or the private plaintiff. It dictates whether there will be an action at all because in that situation, the plaintiff, the individual, has an – you know what I'm saying? Like normally all that's really at stake for EEOC is like are we going to bring this lawsuit or are they going to bring this lawsuit? But in that situation, it's not are we going to bring this lawsuit or are they going to bring this lawsuit. It would be are we going to bring this lawsuit or is this lawsuit dead, right? Potentially, yes. Which potentially puts the EEOC people in a different position of saying like it's one thing to say like resource constraints, you know, right? So I'm not going to bring this lawsuit, but she seems to have a really good lawyer. She'll bring a private party suit. That will vindicate the purpose of the statute. But oh, no, this one has – like it just seems like this is another way in which it could screw up the EEOC's enforcement decisions of the knowledge that, oh, in this particular set of circumstances, we have to bring this lawsuit or there will be no lawsuit. And that could start to skew EEOC's incentives in all kinds of ways. I see where you're going, and I would agree with you that there is a potential there. I agree. But isn't that yet another suggestion that it would really screw up what Congress did here to let you do this? No. Okay. Why not? And here's why. And this goes back to your question, Judge Harris. I'm going to try and tie them together as best as I can, okay? I would file quickly. I would file within 30 days or 60 days my charge with the EEOC. That tolling provision allows the EEOC to take its time with the investigation. It further allows the EEOC, if it's a 300-day jurisdiction case, to take as much time as it needs. It then allows that 90 days for the right to sue to unfold. While within the 180-day period that we've done. You know, this is, I guess I find it striking because earlier you said this is difficult. It is difficult, and when she asked the question about what advice you would give your client, we're talking about someone who has to sign an employment agreement in order to be employed, correct? Yes. But may I say yes? If they don't sign the employment agreement, the employment agreement that you have, they don't get the job, right? Potentially. They could negotiate it, right? This is a we did not litigate that issue here. No one has alleged the contract of adhesion, for example. But I guess what I'm saying is if it is difficult for someone who is an attorney, as you have stated here today that this whole process is difficult, how is that not difficult for someone who is unsophisticated in the process of signing an employment agreement as to knowing that they have to file something with the EEOC immediately, although they have time to do it. And then I think what Judge Hyten has alluded to is that most people don't have an attorney. How is any of that reasonable? It's reasonable in that if you are going to sign an employment agreement and be employed with a company, you too need to read those agreements. And that may seem harsh, okay? And I can understand that. But the employee needs to understand his or her rights with respect to their employment. I really worry that even if it's a posit, a plaintiff who remembers that they signed this 180-day agreement, once they get the letter from the EEOC saying you have 90 days to sue, I mean, I just would find that very confusing as a lawyer. Like maybe the EEOC has made a judgment, like those things aren't enforceable. Great, I have 90 days to sue. I mean, I just wonder if you were right, do we need to get, doesn't the EEOC need to modify its letters? Well, I was going to say this, and I'm not sure that, well, yes, to answer your question, Your Honor, yes. Perhaps it would need to modify its letters. And maybe it is, it's just a simple standard form. They only say it's 90 days. Wouldn't that go against the intent of Congress statutorily? Now it's because of your provision in your contract. Now we're telling the EEOC that they need to change what Congress has told them to do in their letter to comply with your provision in your contract. I get the tension there. And forgive me if I'm speaking too broadly, but I'd like to say it this way. These contractual limitations periods, okay, in this circuit have been enforced. They have been enforced since the Atlantic Line case, perhaps even before that. The tolling here is an important aspect of the statute because it preserves the EEOC's power to investigate. So long as the plaintiff files for claims timely within the 180-day period. The limitations period, although shortened, there's still a limitations period within Title VII. Let me ask you this, and I realize you're almost out of time. So how do you reconcile, and I know Logan is a Sixth Circuit, but how do you reconcile Logan's reliance on the Supreme Court case, Davis, and also I think the other case was Brooklyn Bank or something like that, where the Supreme Court is saying that this is a, where this language is limitations period is intertwined with, I think that's Davis, or if set out by Congress, then it's a substantive right. And then you have Brooklyn, I think it's Brooklyn Bank, or it comes back where they say you cannot waive that substantive right. I think the substantive versus procedural distinction here is a complicated one, to be sure. I don't know that this circuit has specifically addressed it, at least in this context. In Roy Cotton Yard did, in the antitrust context, Your Honor, of course. The procedural versus substantive distinction often depends on, of course if, let me put it this way, of course if the substance of Title VII is to ensure that a person's rights with respect to, and I know I'm out of time, Your Honor, and I'm trying to finish the question. Yes, of course. With respect to discrimination claims are preserved, right? But the limitations period, I don't know that it is substantive. And I think what we've talked about. Can I just ask? Sorry. Yeah. What do I do with the fact that statutes of limitations are substantive for eerie purposes? What do we do with the fact that. In diversity cases, statutes of limitations are substantive for eerie purposes. As in, if you're suing on a state law cause of action, the statute of limitations comes from state law, not from federal law. That's SIBAC that says that. That, it seems hard to square with some of this notion that these are procedural, because literally in deciding whether federal law or state law governs, where the rough allocation is, if procedural, federal, if substantive, state, the Supreme Court has said statute of limitations are governed by state law. That suggests they're substantive. To be honest with you, Your Honor, I've not given that any thought. No problem. So I'm not going to sit here and pretend like I have some eloquent answers. I appreciate the gander. I do not. Okay. But if I can, Judge Benjamin, if I can, just to piggyback very quickly, and I know I'm running out of time here. The Title VII charge filing instruction, I think this gets to the point here, is not jurisdictional. And that is a case from 2019. It's a Supreme Court decision, Fort Bend County. That was referenced in Bracey. The fact that it's not jurisdictional to file this charge lends also to the idea that limiting the limitations period is not a jurisdictional thing either. And that, to me, gets to the substance and procedural distinction. But on the procedural, you would agree that the arbitration provision, well, let me say, you may not agree with me, but it seems to be procedural. It's procedural as to what form we're going to be in. It's not, it doesn't deal with the exhaustion of the remedy. It just says you're going to handle it in arbitration, in Emory Codd. I understand that. I would agree with you. Which seems to me to be procedural, whereas this seems to be more substantive. And I had not thought about what Judge Hytens has stated. But that may, if you think about it, I guess in terms of statute of limitations, then it would be substantive. I'll give you one more site that I think may help with the substance versus procedural distinction. That is Abelard versus IBM. And it cites 14 Penn Plaza, which is a U.S. Supreme Court decision, 556 U.S. at 265 through 268. And Abelard and the Supreme Court decision essentially talked about how the ability to file suit, the ability to file suit is procedural, not substantive. And the tolling provision here, the limitations agreement, merely focuses on that ability, the ability to file the suit. With that, Your Honor, I'm well over my time. Forgive me. We simply request that the court affirm the district court's decision in all respects. Thank you very much for the privilege and honor. Thank you. And Mr. Santo, yeah, you've got a little rebuttal time. I'll address directly that there's a difference between jurisdictional questions and whether or not something is substantive. And I think that that's important here. Jurisdiction really determines whether or not the court can even make a ruling one way or another. And that is a question of jurisdiction is not waivable. If the court has no jurisdiction to hear the case, then no matter what decision came down, if the district court had said, you know, we agree with the plan. And the inverse is true, too. If a court doesn't have jurisdiction, the parties can't create it by contract. Correct. The court either has jurisdiction or it doesn't, irrespective of what the parties agree to. Correct. And that often comes up, I think, a lot of times in reviewing, for example, settlement agreements. If there's a breach of a settlement agreement, that tends to be a breach of contract. So even if the claims released were federal claims, that would be a state law issue. And in a lot of cases, the district courts don't have jurisdiction to review those claims. Can I ask you what you think turns on whether this is a substantive, whether the statute of limitations here is a substantive right or not? Because sometimes I feel that people shorthand this to if it's substantive, it can't be waived. But I thought the law was if it's substantive, it can't be waived if waiving it would be contrary to the public policy behind the substantive right. Which formulation do you think is correct? I think there is an aspect that substantive waiver can exist. In most cases we're dealing with after the fact when we're dealing with the substantive waiver, it deals with, for example, no prospective waiver of ADA timeliness claims or other substantive rights. But even a plaintiff who has a 100 percent valid Title VII claim can, after the fact, waive it by saying I agree to release my claim against you for a dollar or nothing. Right? You can do that. And that would occur after the claim has arisen. Right. And I think that that's the important part, is that this employment agreement was signed prospectively before any claim has arisen. So the substantive right here is that, yes, you can waive the substantive right after the claim has arisen, but not prospectively before the claim. Before even getting into employment, you're agreeing with your employer, I will give up my right to have the full 300 days before you've even employed me, before you've even had the chance to discriminate against me. And that's the policy issue here. And I do want to point, and I know it's dicta. So I'm sorry. I really would like to just try to nail this down. So the rule you are proposing is a substantive right cannot be waived until what happens? Until the cause of action is accrued. And I'm sorry. And that would be whether or not that would be contrary to public policy. Like there's no kind of proviso that the waiver has to be contrary to public policy. So I would argue, Your Honor, if the waiver is contrary to public policy, since waiver essentially is an issue of contract law, any violation of public policy is something that would make the contract void. Because once you're getting to waiver, you're dealing with an agreement between two parties.  There's a bunch of reasons. Congressional intent, Your Honor, perhaps? Yeah, the legislative policy behind the substantive right. You wouldn't ask about that. You would just say, look, it's substantive. You can't waive it until the cause of action accrues. Correct. Okay. I'm not finding that in the law, but I will look again. That would be my argument, at least with regards to the intent of Title VII. And the way we distinguish all the arbitration cases is saying in that situation it's about the need to reconcile two Federal statutes, Title VII and the Federal So Gilmer. Like Gilmer is about the need to reconcile Title VII or whatever employment discrimination statute was at issue with Gilmer. It might have been the ADA. Between that statute and the Federal Arbitration Act, and what the Supreme Court says, well, in that situation, we resolve it in saying you can arbitrate those claims, right? That's how you'd wall off all the arbitration cases? I would actually argue, Your Honor, that the timeliness issue and whether or not a case can be heard in arbitration is actually two separate issues. The cases that were addressed in this matter that dealt with arbitration agreements, based on the arbitration agreement, there was no requirement to go to the administrative agency in the first place. But there was a requirement to go to the arbitrator on a shorter time frame than there would have been an obligation to go to court in some of them. Cotton yarn. That's the facts that you're interested in cotton yarn, for example. And in cotton yarn, though, again, we're dealing with different statutes. That doesn't deal with Title VII, ADA. It deals with the Sherman Act. We're not dealing with the anti-discrimination statutes. Sure. But obviously the antitrust laws create substantive rights, right? I would agree. But I want to point, because I know I'm running short on time, that there's language with regards to congressional intent in Zipes versus TWA in addressing the amendments to Title VII and in adjustments with regards to the timeliness. And it's on pages 394 to 395 of the opinion. The subsection as amended provides that charges be filed within 180 days of the alleged unlawful employment practice. Court decisions under the present law have shown an inclination to interpret this time limitation so as to give the aggrieved person the maximum benefit of the law. It is not intended that such court decisions about that be in any way circumscribed by the extension of the time limits. Congress, when discussing and extending time limitations, discusses that any discussion about time limits with Title VII is to give the maximum benefit of the law to the aggrieved individual. And I know that my time has expired subject to any questions, Your Honor. All right. Thank you very much. Thank you. We will come down and read counsel, and then I'll ask the clerk to adjourn us for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Pamela A. Harris, Toby J. Heytens, DeAndrea Gist Benjamin